IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00188-GPG

BERT SMITH,

      Plaintiff,

v.

RICK RAEMISCH,
CROSSROADS TO FREEDOM,
GIORDANO, Officer,
SHANE MARTIN,
ANDRES ABALOS,
VINCENT ROMERO,
WILLIAM BAILEY,
MARVEL WOLKEN,
MARCIA JACKSON,
BENETTA CRUZ, and
CONNIE PALM,

      Defendants.

_____

ORDER DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT
_____

      Plaintiff, Bert Smith, is in the custody of the Colorado Department of Corrections

and is incarcerated currently at the Colorado State Penitentiary in Canon City,

Colorado.  He has filed a Prisoner Complaint asserting deprivations of his constitutional

rights pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343.  Mr. Smith has been granted

leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

      The Court must construe the Complaint liberally because Mr. Smith is not

represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not act as

an advocate for *pro se* litigants.  *See Hall*, 935 F.2d at 1110.  The Court has reviewed

1

the Complaint and has determined that it is deficient.  For the reasons discussed below, Plaintiff will be directed to file an Amended Complaint.

## I.  The Complaint

Mr. Smith alleges the following in the Prisoner Complaint:  On June 30, 2014, Defendants Wolken, Palm, Martin, Romero, Crossroads to Freedom, and Raemisch committed him involuntarily to "Crossroads to Freedom" -- the mental illness treatment program at Arrowhead Correctional Facility -- based on an invalid assessment score and evaluation.  Plaintiff's mental health commitment continued to April 27, 2015.  He alleges that during his placement in the Crossroads to Freedom program, Defendants Cruz, Romero, and Crossroads to Freedom refused to provide him with information on his course of treatment and the fee schedule for treatment.

Mr. Smith alleges that on September 11, 2014, Defendant Cruz fabricated a misbehavior report against him and thereafter labeled him a "racist" in front of minority groups during therapy sessions and published false accusations about his character.

Plaintiff alleges that he was subjected to disciplinary action based on fabricated disciplinary reports issued by Defendants Cruz, Marvel, Wolken, Romero, Bailey, Jackson, Giordano, Abalas and Crossroads to Freedom on the following dates: October 15, 2014 (for sarcasm); January 16, 2015 (for an unknown charge); January 21, 2015 (for "manipulation of the pull-up system"); January 26, 2015 (for "reaching for intellectual power in order to commit some technically sophisticated and futuristic crimes"); January 28, 2015 (for "lack of progress" and "passive aggressive and vindictive behavior"); February 9, 2015 (for complaining to other inmates about Defendant Giordano's actions); February 13, 2015 (for an unknown charge); and, February 20, 2015 (for "not

2

participating" and "breach of contract").  (ECF No. 1 at 8-13).

In late February or early March 2015, Defendant Romero imposed punitive

sanctions against Mr. Smith for "not taking the program seriously."  (ECF No. 1 at 12).

On March 29, 2015, Defendants Cruz, Romero, Jackson, Palm, Abalos, Bailey

and Crossroads to Freedom disciplined Plaintiff for rule infractions committed by others.

On April 14, 2015, Defendants Jackson and Crossroads to Freedom

discriminated against Plaintiff "because of his religious beliefs" and imposed sanctions

for unspecified fabricated disciplinary offenses.  (*Id.*).

On April 22, 2015, Defendants Jackson and Crossroads to Freedom coerced

numerous inmates to file "bogus misbehavior reports" (*id.*) against Plaintiff in retaliation

for Plaintiff's complaints against Defendant Jackson.

On April 23, 2015, Defendants Cruz, Romero, Jackson, Palm, Abalos, Bailey and

Crossroads to Freedom placed Plaintiff in segregation, fabricated disciplinary reports

against him, and terminated him from the involuntary treatment program, and

transferred him to a higher custody level facility, and "caused him to have an illegal

extension of [his] term of confinement" without any hearing.  (*Id.* at 13).

Mr. Smith asserts that the Defendants' conduct violated his Eighth Amendment

rights and his Fourteenth Amendment due process and equal protection rights.  He

further claims that his involuntary commitment infringed on his First Amendment free

exercise rights, and that the fabricated disciplinary charges infringed on his First

Amendment free exercise and free speech rights, as well as his right to be free from

retaliation in response to his grievance filings.  Plaintiff requests declaratory, injunctive

and monetary relief.

## II. Analysis

### A. Personal Participation of Defendant Raemisch

The Complaint is deficient because Mr. Smith does not allege specific facts to show that Defendant Raemisch, the Director of the Colorado Department of Corrections, was personally involved in the alleged constitutional deprivations.

Personal participation is an essential allegation in a *Bivens* action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("each Government official, . . . is only liable for his or her own misconduct"); *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) ("[D]irect, personal participation [is] required to establish *Bivens* liability."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) (citations and quotations omitted).  A supervisor defendant may not be held liable for the unconstitutional conduct of his subordinates on a theory of respondeat superior.  *Iqbal*, 556 U.S. at 676.  *See also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (stating that "the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.").

Unlike the other named Defendants, Mr. Raemisch is not directly involved in implementing the Crossroads to Freedom Program at Arrowhead Correctional Facility. He cannot be held liable under § 1983 simply because he is the Executive Director of the Colorado Department of Corrections.

## B. Due Process Claims

Mr. Smith claims that Defendants' actions in filing numerous fabricated disciplinary charges against him violated his Fourteenth Amendment due process rights, as did his transfer to a higher custody level facility.  The Court finds that his due process claims are deficient for the following reasons. [1]

"[M]ere allegations of falsified evidence or misconduct reports," without more, do not implicate the constitution.  *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002); *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Escobar v. Mora*, 496 F.  Appx. 806, 816 (10th Cir. Sept. 10, 2012) (unpublished); *Johnson–Bey v. Ray*, No. 01–3382, 38 F. Appx. 507, 510 (10th Cir. Mar. 19, 2002) (unpublished).  Mr. Smith does not allege facts to show that he was deprived of his procedural due process rights following the filing of the alleged false disciplinary reports.  As such, he fails to state an arguable due process claim.

Moreover, a due process violation occurs in the context of prison discipline only when the punishment imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life or when it will inevitably affect the duration of a sentence.  *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).  A "significant and atypical hardship" sufficient to create a liberty interest protected by due process is one that is of substantial degree (i.e., does more than mirror the conditions imposed on inmates in administrative segregation and protective custody) and duration*. See Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002).  Mr. Smith does not allege any facts

---

[1] The Court does not address in this Order Mr. Smith's due process claim based on his involuntary commitment to a mental health treatment facility because his allegations state an arguable claim for relief under *Vitek v. Jones*, 445 U.S. 480, 491-94 (1980) (holding that a prisoner's involuntary commitment to a mental hospital must comply with the requirements of procedural due process).

in the Complaint to suggest that the alleged false disciplinary charges caused him to suffer an atypical and significant hardship in relation to the ordinary incidents of prison life.

And, finally, the Constitution does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *See Meachum v. Fano*, 427 U.S. 215, 223-25 (1976)); *Moody v. Daggett*, 429 U.S. 78, 87 n. 9, (1976) (absent a state-created liberty interest, neither a change in a prisoner's security classification, nor a prisoner's transfer from one prison to another implicates a liberty interest within the meaning of the due process clause).  Instead, the Due Process Clause is implicated only if Plaintiff's transfer to a higher security facility resulted in an atypical and significant hardship in relation to the ordinary incidents of prison life.  *See Willkinson v. Austin*, 125 S.Ct. 2384, 2393-2394 (2005) (citing *Sandin*).

And, finally, Mr. Smith's assertion that the length of his sentence was increased when he was transferred to a higher security facility must be raised first in an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, attacking the execution of his sentence.  *See Edwards v. Balisock*,  520 U.S. 641, 648 (1997) (holding that prisoner must raise challenge to prison disciplinary action that lengthened his sentence in a habeas corpus proceeding before proceeding with a civil rights claim).

### C.  Eighth Amendment Claim

Mr. Smith alleges that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when he was subjected to a period of involuntary mental health commitment, fabricated disciplinary charges, and transfer to a higher classification facility.

Under the Eighth Amendment, prison officials must ensure that prisoners are afforded "humane conditions of confinement," such as "adequate food, clothing, shelter, and medical care," and "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). "To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference to inmate health or safety.'" *Reynolds v. Powell*, 370 F.3d 1028, 1031-32 (10th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834).

To satisfy the objective prong of the *Farmer* test, a prisoner must show that "conditions were more than uncomfortable," and instead rose to the level of being "sufficiently serious" so as to "deprive inmates of the minimal civilized measure of life's necessities." *Despain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Farmer*, at 834); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment's prohibition on cruel and unusual punishment "'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir.1998) (quoting *Rhodes*, 452 U.S. at 347).  Whether the condition complained of is sufficiently serious is evaluated on an objective basis. *Barney*, 143 F.3d at 1310.  In the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail.." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir.1994) (internal quotation marks omitted).

Mr. Smith's allegations in the Complaint do not suggest a deprivation of his Eighth Amendment right to humane conditions of confinement.

### D.  Equal Protection Claim

Mr. Smith makes conclusory assertions that the Defendants' alleged conduct violated his Fourteenth Amendment equal protection rights.

The Equal Protection Clause of the Fourteenth Amendment forbids states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Because Mr. Smith does not allege any facts in the Complaint to show that the Defendants treated him differently from other persons who were similarly situated, he fails to state an arguable equal protection violation.  *See Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011) ("[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.")(internal quotation marks omitted)).

### E.  First Amendment Free Exercise Claim

Mr. Smith claims that the alleged fabricated disciplinary charges infringed on his First Amendment free exercise rights.

Inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs. *See Makin v. Colo. Dep't. of Corr.*, 183 F.3d 1205, 1209 (10th Cir.1999); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  What constitutes a "reasonable opportunity" is determined in reference to legitimate penological objectives. *Id.*; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

In the Complaint, Mr. Smith does not allege specific facts to show how the alleged fabricated disciplinary charges interfered with a sincerely-held religious belief.

### F.  First Amendment Free Speech Claim

Mr. Smith also claims that the alleged fabricated disciplinary charges infringed on his First Amendment free exercise rights because he was punished for expressing himself.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Restrictions on a prisoner's First Amendment free speech rights are constitutional if the restrictions are "reasonably related to legitimate penological interests."  *Turner*, 482 U.S. at 89.   A prisoner asserting a violation of his First Amendment rights to freedom of speech must allege facts to show that the prison action he challenges is not "reasonably related to a legitimate penological interest." *Gee v. Pacheco*, 627 F.3d 1178, 1187-88 (10th Cir. 2010).

In the Complaint, Mr. Smith alleges that he was disciplined for expressing "sarcasm" and for engaging in "passive aggressive and vindictive behavior," but he does not allege facts to demonstrate that the alleged disciplinary charges were not reasonably related to a legitimate penological interest, such as maintaining order and security.

### G.  Unconstitutional Retaliation Claim

Finally, Mr. Smith makes conclusory assertions that one or more of the Defendants retaliated against him for filing grievances or complaints against the Defendants.

Prison officials may not retaliate against an inmate for exercising his constitutional rights.  *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). To state a retaliation claim, Plaintiff must allege facts to show that (1) he was engaged in constitutionally protected activity, (2) the Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and, (3) the Defendants' adverse actions was substantially motivated as a response to Plaintiff's constitutionally protected activity.  *See Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir.2007).

In the Complaint, Plaintiff does not allege specific facts to satisfy the second or third elements outlined above.  "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Gee*, 627 F.3d at 1191 (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1991)).  Accordingly, it is

ORDERED that Plaintiff, Bert Smith, file **within thirty (30) days from the date of this order,** an Amended Complaint that addresses the deficiencies in the original Complaint, as discussed in this order.  It is

FURTHER ORDERED that Mr. Smith shall obtain the court-approved Prisoner Complaint form (with the assistance of his case manager or facility's legal assistant),

along with the applicable instructions, at www.cod.uscourts.gov, and shall use that form in filing the Amended Complaint. It is

FURTHER ORDERED that if Mr. Smith fails to file an Amended Complaint that complies with this order within the time allowed, the Court will review the allegations of the original Complaint and some or all of this action may be dismissed without further notice, for the reasons discussed above.  It is

FURTHER ORDERED that the Motion for Appointment of Counsel (ECF No. 5) and Motion for Court to Seize Evidence/Exhibits from Plaintiff and Defendants (ECF No. 6) are DENIED WITHOUT PREJUDICE as premature.  Plaintiff may renew his motions if this action is drawn to a presiding judge, following initial review.

DATED February 11, 2016, at Denver, Colorado.

BY THE COURT:

_____
Gordon P. Gallagher
United States Magistrate Judge